IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-01520-KLM

JULIA CHUNG,

     Plaintiff,

v.

EL PASO COUNTY / COLORADO SPRINGS SCHOOL DISTRICT #11,

     Defendant.

_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

     This matter is before the Court on Defendant's **Corrected Motion for Summary Judgment** [#79][1] (the "Motion").[2]  Plaintiff, who proceeds in this matter as a pro se litigant,[3] filed a Response [#82] in opposition to the Motion,[4] and Defendant filed Reply [#88].  The

---

    [1]  "[#79]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF).  This convention is used throughout this Order.

    [2]  The case has been referred to the undersigned for all purposes [#12] pursuant to the Court's Pilot Program and 28 U.S.C. § 636(c), on consent of the parties [#11].

    [3]  The Court must construe the filings of a pro se litigant liberally.  *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  However, the Court should not be the pro se litigant's advocate, nor should the Court "supply additional factual allegations to round out [the pro se litigant's] complaint or construct a legal theory on [her] behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110).  In addition, pro se litigants must follow the same procedural rules that govern other litigants. *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

    [4]  Plaintiff attaches approximately 650 pages of exhibits to her Response.  She asserts that these exhibits support her version of the case.  However, she only occasionally cites to a specific exhibit, and rarely to a specific page number within an exhibit, when discussing the evidence which allegedly supports her opposition to the Motion.  "[O]n a motion for summary judgment, it is the responding party's burden to ensure that the factual dispute is portrayed with particularity, without

Court has reviewed the Motion, Response, Reply, the entire case file, and the applicable law, and is sufficiently advised in the premises. For the reasons set forth below, the Motion [#79] is **GRANTED**.

## I. Summary of the Case[5]

Based on the following events, Plaintiff asserts claims of employment discrimination and retaliation due to her race (Asian) and national origin (Chinese). *Compl.* [#1]; *Response* [#82] ¶ 52; *Reply* [#88] ¶ 52. Defendant District 11 ("Defendant," "District 11," or the "District") is a public school district in Colorado. *Decl. of Karey Urbanski* [#79-13] ¶ 3. Sabin Middle School ("Sabin") is located in Colorado Springs, Colorado, and is a District 11 school for grades six through eight. *Id.*; *Depo. of Pl.* [#79-2] at 16. Plaintiff has been employed by Defendant as a teacher since 1992, and since school year ("SY") 1993-94, she has taught only at Sabin. [#79-2] at 16. Sherry Kalbach ("Kalbach") has been the principal at Sabin since approximately SY 2006-07. *Id.* at 23-24; *Depo. Ex. 4* [#79-16]. Berry Swenson ("Swenson") was the principal at Sabin before Principal Kalbach. *Id.*

---

depending on the trial court to conduct its own search of the record." *Cross v. The Home Depot*, 390 F.3d 1283, 1290 (10th Cir. 2004) (internal quotation and citation omitted). The Court is "not obligated to comb the record in order to make [Plaintiff's] arguments for [her]." *See Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1199 (10th Cir. 2000). Further, Local Rule 7.1(e) provides that "[e]very citation in a motion, response or reply shall include the specific page or statutory subsection to which reference is made." D.C.COLO.LCiv R. 7.1(e). The Court is not required to sort through the unorganized documents submitted by Plaintiff. *See* Fed. R. Civ. P. 56(c)(3) (stating that the Court "need consider only the cited materials"). The Court may, and has, considered other materials in the record. *See id.* However, the Court may not and has not done Plaintiff's job for her by organizing her submissions and researching every submitted document to find support for the statements made in her briefing.

[5] The following summary construes the evidence in the light most favorable to Plaintiff, as the nonmovant. *Ellis v. J.R.'s Country Stores, Inc.*, __ F.3d __, __, 2015 WL 1004715 (10th Cir. Mar. 9, 2015) ("We . . . recit[e] all summary-judgment evidence in the light most favorable to . . . the nonmovant.").

District 11's school year runs from the second week of August to the end of May. [#79-2] at 16-17.  Around April of each year, Principal Kalbach assigns each teacher to his or her subject for the upcoming school year. *Decl. of Sherry Kalbach* [#79-12] ¶ 3.  In more recent years, Principal Kalbach has invited teachers to tell her their preferences for teaching assignments, although she is not bound by those preferences. *Id.*; *Depo. Ex. 7* [#79-17].   From SY 1993-94 through SY 1998-99, Plaintiff taught various sixth grade subjects.  From SY 2001-02 through SY 2003-04, Plaintiff taught 8th Grade Language Arts. From SY 2004-05 through SY 2009-10, she taught Drama.  From SY 2010-11 through SY 2012-13, she taught 6th Grade Reading.  From SY 2013-14 through SY 2014-15, she again taught Drama. [#79-2] at 19-21; [#79-12] ¶¶ 5, 21; [#79-16].

As a teacher at Sabin, Plaintiff is represented by a labor union, the Colorado Springs Education Association, and is employed pursuant to a collective bargaining agreement called the Master Agreement. [#79-2] at 135.  Former Principal Swenson first assigned Plaintiff to teach Drama for SY 2004-05. [#79-2] at 135.  In response, Plaintiff filed a grievance under the Master Agreement, but ultimately her assignment to Drama was not changed. *Id.* at 22, 57.  Plaintiff taught Drama for six years, from SY 2004-05 through SY 2009-10. [#79-2] at 19-20; [#79-16].  In each of those years, Defendant paid the conference fee and mileage for Plaintiff to attend a theater conference. [#79-2] at 31-32; [#79-13] ¶ 4.

Principal Kalbach changed Plaintiff's assignment to 6th Grade Reading for SY 2010-11, without Plaintiff having first requested the assignment. [#79-2] at 22-23; [#79-16]. Plaintiff taught 6th Grade Reading for three years, from SY 2010-11 through SY 2012-13. [#79-2] at 19-20; [#79-16].  Plaintiff received Exemplary evaluations as a 6th Grade Reading

teacher.[6]  *Response* [#82] ¶ 51; *Reply* [#88] ¶ 51.  During the three years that Plaintiff

taught 6th Grade Reading, she also sponsored the Drama Club. [#79-2] at 24.  She agreed

to do so because of the students' enthusiasm and the opportunity it gave her to bond with

the students.  *Id.* at 25.  Defendant provided Plaintiff with a stipend of approximately $500

per year for sponsoring the Drama Club.  *Id.* at 28.

Beginning in SY 2010-11, Susan Strong ("Strong") was employed at Sabin as the

SAIL (i.e., gifted and talented) Language Arts teacher. [#79-12] ¶ 12.  Her status that first

year was "Intent Not to Renew" ("INR"), which meant that her contract would automatically

expire at the end of that school year.[7]  *Id.*  Regardless, Ms. Strong was retained by

Principal Kalbach with the same teaching assignment for SY 2011-12.[8]  *Id.*  In May 2012,

Principal Kalbach announced the teaching assignments for SY 2012-13, including Ms.

Strong's assignment.[9]  *Id.* ¶ 16.  Principal Kalbach states that she had reviewed Ms.

---

[6]  The performance review forms used at Sabin in SY 2011-12 required reviewers to rate teachers on eighteen criteria and provide an overall rating by totaling the eighteen scores. [#79-12] ¶ 14.  The possible ratings and point score for each criterion were: Exemplary (3 points), Effective (2 points), Emerging (1 point), and Unsatisfactory (0 points).  *Id.*  Thus, the possible overall ratings were: Exemplary (43-57 points), Effective (28-42 points), Emerging (15-28 points), and Unsatisfactory (0-14 points).  *Id.*

[7]  The process for retaining an INR teacher varies from year to year depending on a variety of factors. [#79-13] ¶ 11.  In some years, Defendant has required principals to post the job vacancy created when an INR contract expires and to interview candidates who apply for the vacancy, which may include the incumbent INR teacher.  *Id.*  In other years, Defendant has allowed principals to retain INR teachers for another year without posting the vacancy or interviewing candidates.  *Id.*  In 2011, Defendant allowed principals to retain INR teachers for SY 2011-12 without posting or interviewing.  *Id.*

[8]  There were no INR teachers at Sabin in SY 2010-11 who Principal Kalbach believed to be Asian or Chinese and who were not retained for SY 2011-12.  [#79-12] ¶ 12.

[9]  There were no teachers at Sabin whom Principal Kalbach believed to be Asian or Chinese and who had SY 2011-12 performance scores equal to or better than Ms. Strong's but who were not retained for SY 2012-13.  [#79-12] ¶ 16.

Strong's contract and assigned her to teach 6th Grade Reading because her performance review was strong.[10]  *Id.* ¶ 13.  At the time, Plaintiff had more experience as a 6th Grade Reading teacher and had better performance reviews than Ms. Strong, who later became the co-chair for the Reading Department for SY 2014-15.  *Response* [#82] ¶¶ 52, 54; *Reply* [#88] ¶¶ 52, 54.

In June 2012, Plaintiff sent Principal Kalbach an email in which she requested a letter of reference in connection with Plaintiff's application for the position of TCT Coordinator. [#79-4] at 133-34; [#79-7] at 68-69; *Depo. Ex. K* [#79-23].  Principal Kalbach asserts that she did not provide the letter to Plaintiff because the deadline for submission of the application materials had passed by the time she saw the email, but that she instead invited Plaintiff to identify Principal Kalbach as a reference and ask people to call her for a reference.[11]  [#79-2] at 127; [#79-7] at 68-69; *Depo. Ex. K* [#79-23].  Plaintiff did not do so.  *Id.*  At some point after this email thread occurred, Principal Kalbach was asked to sit on the interview panel for the TCT Coordinator position, and after that point, Principal Kalbach states that she would not have provided a letter of reference for any candidate because of the conflict of interest. [#79-7] at 69-71, 77.

In July 2012, Principal Kalbach served on the interview panel when Plaintiff

---

[10]  Ms. Strong's performance review for SY 2011-12 rated her as "Effective" overall with a total score of 40. [#79-12] ¶ 15.  She was rated "Exemplary" on four and "Effective" on fourteen of the eighteen criteria measured.  *Id.*

[11]  Principals are not required to provide a letter of reference to a teacher who requests one. [#79-13] ¶ 12.  Many teachers have been hired into other positions within District 11 without having letters of reference from their principals.  *Id.*  Principal Kalbach has failed to provide letters of reference to other teachers, including teachers whom she did not believe were Chinese or Asian. [#79-12] ¶ 17.

interviewed for the TCT Coordinator position.[12] [#79-2] at 133-34; *Depo. of Sherry Kalbach* [#79-7] at 68-70, 77-78; [#79-23]. Principal Kalbach said nothing negative about Plaintiff when Plaintiff was interviewed for the position or in the discussions among the interviewers thereafter. [#79-7] at 77-78. Rather, she stayed silent until the other interviewers had stated their impressions of Plaintiff and then only said, "I agree." *Id.* Ultimately, another candidate was hired for the position, but according to Karey Urbanski, District 11's HR Director for Secondary Education who served on the panel that interviewed Plaintiff and other candidates for the TCT Coordinator position and selected the candidate for the position, Plaintiff was not denied the position because of anything Principal Kalbach said or did. [#79-13] ¶¶ 2, 14.

In 2012 or 2013, Plaintiff applied to be a Disciplinary Coach. [#79-3] at 131. Principal Kalbach asserts that she had no involvement in that application or selection process and that she did not provide a negative reference or make any negative comments about Plaintiff. [#79-12] ¶ 20.

In April 2013, Principal Kalbach decided to add Drama to the schedule for SY 2013-14. *Id.* at 38-39. She assigned Plaintiff to teach Drama and informed Plaintiff of this decision in a meeting on April 5, 2013. *Id.* at 41; *Depo. Ex. 8* [#79-18]. Principal Kalbach asserts that she assigned Plaintiff to teach Drama because she wanted someone with experience teaching Drama, because Plaintiff had previously taught Drama for six years

_____

[12] Principal Kalbach has served on interview panels involving other teachers at Sabin who were applying for other positions, including teachers whom Principal Kalbach did not believe to be Asian or Chinese. [#79-7] at 76-77; [#79-13] ¶ 18. There is no policy or rule in District 11 that prohibits a principal from serving on an interview panel involving a teacher at her school, and this most commonly happens for district-level or central-office positions like the TCT Coordinator position. [#79-7] at 95-96; [#79-13] ¶ 13.

at Sabin, because, as far as Principal Kalbach was aware, Plaintiff was the only teacher

at Sabin who had previously taught Drama at any school, and because Defendant had

previously provided money for Plaintiff to attend theater conferences and to sponsor

Sabin's Drama Club.[13]   *Depo. of Sherry Kalbach* [#79-7] at 95-96; [#79-12] ¶ 5.

In addition, Principal Kalbach believed that Plaintiff was "highly qualified" to teach

Drama because Plaintiff had taught Drama at Sabin for six years after passage of the No

Child Left Behind Act.[14] [#79-7] at 103-05, 177-78; [#79-13] ¶¶ 6-7, 9.  Principal Kalbach

believed that CDE and the District's Human Resources Department ("HR") would not have

allowed Plaintiff to teach Drama for six years if she was not "highly qualified" to do so.[15]

---

[13] Plaintiff asserts that another teacher named Sarah Ortiz ("Ortiz") had expressed interest in teaching Drama and should have been assigned to teach Drama instead of Plaintiff.  Ms. Ortiz was a Special Education teacher at Sabin who began teaching Drama at another school in SY 2014-15. [#79-7] at 110; *Depo. of Sarah Ortiz* [#79-8] at 8-9.  Before that year, she had never taught Drama in a school. [#79-8] at 9.  Ms. Ortiz once commented to Principal Kalbach that she might be interested in teaching Drama at some time in the future. [#79-7] at 110-11.  Principal Kalbach asserts that, had she known or remembered in April 2013 that Ms. Ortiz wanted to teach Drama for SY 2013-14, she still would have assigned Plaintiff to teach Drama because she wanted an experienced Drama teacher, because Plaintiff had taught Drama for six years at Sabin, and because Ms. Ortiz had never taught Drama in a school before. [#79-12] ¶ 8.

[14] "Highly qualified" is a term of art meaning that a teacher has the necessary subject matter competency to teach a particular subject. [#79-13] ¶ 5.  The term comes from the No Child Left Behind Act of 2001.  *Id.*  The Colorado Department of Education ("CDE") establishes criteria to guide Colorado public school districts in determining whether a teacher is "highly qualified" in a particular subject.  *Id.*; [#79-3] at 103-04.  CDE has determined that a teacher is "highly qualified" to teach Drama to K-12 students if she is "highly qualified" to teach Secondary English Language Arts.  *Decl. of Jennifer Phillips Simons* [#79-28].  Plaintiff is "highly qualified" to teach Secondary English Language Arts. [#79-3] at 75; [#79-13] ¶ 6.  Plaintiff disputes this by providing evidence that the No Child Left Behind Act requires teachers to have twenty-four college credit hours with drama content in order to be highly qualified to teach Drama, *Decl. of Tim Cross* [#82-1] ¶ 10, which Plaintiff apparently does not have.  However, this dispute is immaterial for resolving the present Motion.  The Court also notes that in January 2014, Plaintiff represented to the National Education Association that she was "highly qualified to teach math, science, social studies, language arts and Drama." [#79-3] at 104-08; *Depo. Ex. 23* [#79-21] at 4.

[15] As noted, CDE had repeatedly told Defendant that a teacher is "highly qualified" to teach Drama if she is "highly qualified" to teach Secondary English Language Arts.  [#79-13] ¶ 6.  In

When Plaintiff later spoke with Principal Kalbach's supervisor Jason Ter Horst ("Ter Horst"),

Defendant's K-12 Executive Director, about her assignment to Drama in 2013, he asked

HR to confirm whether Plaintiff was "highly qualified" to teach Drama. [#79-13] ¶ 9; *Depo.*

*of Jason Ter Horst* [#79-9] at 19-22.   HR reviewed Plaintiff's records and determined that

she was "highly qualified" to teach Secondary English Language Arts and therefore she

was "highly qualified" to teach Drama. [#79-13] ¶ 9.

Plaintiff opposed the Drama assignment and unsuccessfully attempted to persuade

Principal Kalbach to change her mind. [#79-2] at 43, 45.   Principal Kalbach instead offered

to buy new Drama supplies and materials, as well as to consider Plaintiff first if a Reading

teaching assignment became available over the summer of 2013.   *Id.* at 47; [#79-18]; [#82-

30].   On April 25, 2013, approximately two weeks after being informed of her new

assignment, Plaintiff met with Alvin Brown ("Brown"), Defendant's Equal Opportunity

Programs Director. [#79-2] at 50; *Depo. of Alvin Brown* [#79-6] at 8.   At that meeting,

Plaintiff complained of her Drama assignment and stated that she felt she was being

discriminated against. [#79-6] at 14-15.   She told Mr. Brown that she would prefer either

teaching English or receiving a promotion to an administrative position, and she authorized

Mr. Brown to attempt to resolve the issue.   *Id.* at 17-18.   Mr. Brown thereafter spoke

multiple times with Principal Kalbach and Mr. Ter Horst.   *Id.* at 18, 24; [#79-2] at 52-53;

[#79-3] at 71; [#79-9] at 9-10.   After these meetings, Mr. Brown told Plaintiff that Mr. Ter

---

addition to this, each school in District 11 reports all of its licensed employees' teaching assignments to HR annually, HR reviews each teacher's record and assignment to confirm that the teacher is "highly qualified" for that subject, and HR reports that information to CDE.   *Id.* ¶ 7.   "If CDE concludes that a teacher is not 'highly qualified' for his/her assignment, [CDE] notifies the school district."   *Id.*   CDE has never notified the District or Sabin that Plaintiff was not "highly qualified" to teach Drama.   *Id.*

Horst and Principal Kalbach had conveyed to him a nondiscriminatory reason for Plaintiff's assignment to Drama, and that this reason seemed truthful to him. [#79-6] at 25-26.  On April 26, 2013, the day after Plaintiff first met with Mr. Brown, she filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). [#79-4] at 163; *Depo. Ex. 33* [#79-22]; *see also* [#82-27].

Plaintiff had not complained to Defendant about alleged harassment by Principal Kalbach before speaking to Mr. Brown on April 25, 2013. [#79-4] at 155.  The evidence demonstrates that Principal Kalbach has treated employees other than Plaintiff, including those not believed to be Asian or Chinese, in ways that include: being reserved in a way that could be viewed as "silent treatment;" giving them disapproving looks and interrupting them in meetings; criticizing their statements or ideas in a way that could be construed as a "put down;" and speaking in a curt tone that could be viewed as "hostile" or "condescending."[16] [#79-12] ¶ 10; *Decl. of Marsha West* [#79-14] ¶¶ 4-7; *Decl. of Carolyn Hunt* [#79-27] ¶¶ 4-6.  Principal Kalbach admits to having acted in the same manner with Plaintiff when she felt that Plaintiff was being disruptive or going off on tangents. [#79-12] ¶ 10; [#79-27] ¶ 7.  Principal Kalbach's opinion of Plaintiff is that she can be needlessly confrontational and argumentative, that she does not listen, and that she disrupts meetings

---

[16] Plaintiff admits that Principal Kalbach also harassed and bullied employees Linda Bowen, Bobbe Jackson, and Lorna Stievater ("Stievater"). [#79-4] at 145-47; *Pl.'s Responses to Def.'s Interrogatories #1-20* [#79-26] at 3-4.  Ms. Ortiz states that Principal Kalbach appeared to her to dislike Jeannie Meridith, Ms. Stievater, Jim Scanlan, and Jodie Garten based on Principal Kalbach's eyes and body stance, short and clipped speech patterns, and interrupting and talking over them. [#79-5] at 21-27.  Another employee, Barbara Terrell-Jackson, states that Principal Kalbach was rude to her, interrupted her on many occasions, and has yelled at her while red in the face.  *Depo. of Barbara Terrell-Jackson* [#79-10] at 46.  Marsha West states that Principal Kalbach interrupted and criticized Caucasian teachers such as Brenda Aker and Susan Forget. [#79-14] ¶¶ 5-7.  Principal Kalbach does not believe that any of those persons are Asian or Chinese. [#79-12] ¶ 11.

with irrelevant issues. [#79-12] ¶ 9.

Sometime between April and June 2013, the SAIL Reading/Language Arts teaching position at Sabin became available. [#79-12] ¶ 6.  Plaintiff spoke with Mr. Ter Horst about the position but ultimately she did not teach the subject. [#79-3] at 71; *Depo. Ex. 33* [#79-19].  A 7th Grade Reading teacher at Sabin was assigned to the position instead. [#79-12] ¶ 6.  Although Plaintiff, Principal Kalbach, and Mr. Ter Horst discussed Plaintiff taking the now-open 7th Grade Reading assignment, she ultimately did not teach this subject either. [#79-3] at 82-83; *Depo. Ex. 19* [#79-20].  As originally assigned, Plaintiff taught Drama in SY 2013-14. [#79-16].   Plaintiff lost no pay or benefits as a result of her teaching assignment to Drama instead of 6th Grade Reading. [#79-4] at 236-37; [#79-13] ¶ 10.

In mid-2013, Plaintiff applied for a position as District 11's Multi-Lingual Facilitator ("MLF").[17] [#79-4] at 165, 167.  Defendant conducted three rounds of interviews for the MLF position.  *Depo. of Holly Brilliant* [#79-5] at 13.  Plaintiff interviewed during the first round in early or mid-August 2013.  *Id.* at 14; [#79-4] at 171.  After the first round, the job was reposted with a note that "Previous applicants do not need to reapply." [#79-5] at 24; [#79-11] ¶ 4, Ex.1.  The final selection was made in November 2013. [#79-5] at 33; *Depo. Ex. YYY* [#79-25].  In filing the position, Defendant sought a person who had recent experience as an ELL teacher and successful leadership of an ELL program at a district level. [#79-5] at 27; [#79-11] ¶ 5.  Defendant asserts that it hired Talonna Hybki ("Hybki") because it felt

---

[17]   The function of the MLF is to coordinate the administration of Defendant's various programs and responsibilities regarding students for whom English is not the first language. [#79-4] at 165-67; *Decl. of Holly Brilliant* [#79-11] ¶ 3 & Ex. 1; *Depo. Ex. MM* [#79-24].  These students are commonly referred to as "English Language Learners" ("ELL").  *Id.*  The programs for ELL students are typically referred to as English Language Acquisition, English Acquisition, or English as a Second Language.  *Id.*

she had the best skills and knowledge base and leadership style for the position. [#79-5] at 36-37.  Ms. Hybki had served from 2001 to 2006 as program manager of the Denver Public Schools' Department of English Language Acquisition, a position very similar to Defendant's MLF position. [#79-11] ¶ 6.  She also had a master's degree in teaching English as a Second Language and had taught English Language Acquisition from 1999 to 2001.  *Id.*; *see also Recommendation for Employment* [#82-25] at 3 (discussing Talonna Hybki).  In contrast, Plaintiff has never administered an ELL program at a district level, has no master's degree in English Language Acquisition, and had not taught English as a Second Language since the early 1980s. [#79-4] at 177-79; *Depo. Ex. 1* [#79-15].

In April 2014, Principal Kalbach decided to assign Plaintiff to teach Drama again for SY 2014-15. [#79-12] ¶ 21.  Principal Kalbach asserts that she made the assignment because she still wanted to offer a Drama class, she still wanted an experienced Drama teacher, Plaintiff now had seven years' experience teaching Drama at Sabin, and Plaintiff was still the only teacher at Sabin who had taught Drama before.  *Id.*  Plaintiff ultimately again taught Drama at Sabin in SY 2014-15. [#79-2] at 181-82.  Plaintiff filed a second charge with the EEOC on June 20, 2014.

In the present lawsuit, Plaintiff asserts Title VII claims of discrimination and retaliation.  *See generally Compl.* [#1].  Defendant responds with the Motion at issue [#79], in which it maintains that it is entitled to summary judgment on all of Plaintiff's claims.

## II.  Standard of Review

The purpose of a motion for summary judgment pursuant to Fed. R. Civ. P. 56 is to assess whether trial is necessary.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  An issue is genuine if the evidence is such that a reasonable jury could resolve the issue

in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it might affect the outcome of the case under the governing substantive law. *Id.*

The burden is on the movant to show the absence of a genuine issue of material fact. *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998) (citing *Celotex*, 477 U.S. at 323). When the movant does not bear the ultimate burden of persuasion at trial, the "movant may make its prima facie demonstration [of the absence of a genuine issue of material fact] simply by pointing out to the [C]ourt a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Id.* at 671. If the movant carries the initial burden of making a prima facie showing of a lack of evidence, the burden shifts to the nonmovant to put forth sufficient evidence for each essential element of his claim such that a reasonable jury could find in his favor. *See Anderson*, 477 U.S. at 248; *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999), abrogation recognized by *Eisenhour v. Weber Cnty.*, 744 F.3d 1220, 1227 (10th Cir. 2014). Conclusory statements based merely on conjecture, speculation, or subjective belief are not competent summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004). The nonmoving party's evidence must be more than "mere reargument of [his] case or a denial of an opponent's allegation" or it will be disregarded. *See* 10B Charles Alan Wright, et al., Federal Practice and Procedure § 2738 at 356 (3d ed. 1998).

Only documents that adhere to the evidentiary requirements of Fed. R. Civ. P. 56 may be considered for purposes of summary judgment. Rule 56(c) provides that:

(1) A party asserting that a fact cannot be or is genuinely disputed must

support the assertion by:

>    (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials[.]
>    ...

(3) Materials Not Cited. The court need consider only the cited materials, but it may consider other materials in the record.

(4) Affidavits or Declarations. An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Fed. R. Civ. P. 56(c)(1)-(4).

## III.  Analysis

Title VII prohibits an employer from engaging in certain behavior, including discriminating against any individual "because of such individual's race, color, religion, sex, or national origin . . . ."  42 U.S.C. § 2000(e)-2(a).  Title VII also forbids an employer from retaliating against an individual because the individual "has opposed any practice made an unlawful employment practice" by Title VII, 42 U.S.C. § 2000(e)-3(a) (retaliation).  A plaintiff may prove discrimination and retaliation by either direct or circumstantial evidence.  *See Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1145 (10th Cir. 2008); *Anderson v. Acad. Sch. Dist. 20*, 122 F. App'x 912, 916 (10th Cir. 2004).  Direct evidence demonstrates on its face that employment termination was either discriminatory or retaliatory.  *Adamson*, 514 F.3d at 1145.  In contrast, circumstantial evidence permits the fact finder to draw a reasonable inference from facts indirectly related to discrimination or retaliation that discrimination or retaliation has, in fact, occurred.  *Anderson*, 122 F. App'x at 916.

Because Plaintiff does not provide direct evidence of discrimination or retaliation,

and because the Court's review of the record reveals none, Plaintiff's Title VII claims are subject to the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973).   Under this framework, the plaintiff bears the initial burden of establishing a prima facie case of discrimination or retaliation.  *Id.*  If the plaintiff meets this initial burden, the defendant must then offer a legitimate, non-discriminatory reason for its employment action.  *Id.*  If the defendant offers a legitimate, non-discriminatory reason for its employment action, the plaintiff then bears the ultimate burden of demonstrating that the defendant's proffered reason is pretextual.  *Id.*

## A.   Title VII Discrimination

Based on the following, the Court finds that Plaintiff has failed to establish a prima facie case of discrimination under Title VII.  To make a prima facie case of discrimination under Title VII, a plaintiff must establish "that (1) she belongs to some protected class, (2) she was qualified for the position or benefit at issue, (3) she suffered an adverse employment action, and (4) she was treated less favorably than others . . . ."  *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1201 (10th Cir. 2006) (quoting *Exum v. U.S. Olympic Comm.*, 389 F.3d 1130, 1134 (10th Cir.  2004)).  Defendant does not dispute that Plaintiff belongs to a protected class.

Plaintiff's discrimination claims are based on several incidents which the Court separately addresses: (1) Plaintiff's assignment to teach Drama for SY 2012-13, (2) harassment by Principal Kalbach, (3) preferential treatment of Ms. Strong, and (4) Principal Kalbach's involvement in Plaintiff's applications for other positions within District 11.[18]

---

[18]  Plaintiff complains of a wide array of alleged assorted misconduct by her employer.  She also provides a wide-ranging array of evidence (as well as unsupported allegations) regarding these

1.     **Assignment to Teach Drama in SY 2012-13**

Defendant argues that Plaintiff has failed to demonstrate that she suffered an adverse employment action.  "An adverse employment action includes acts that constitute a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."  *Bejar v. McDonald*, 601 F. App'x 628, 631 (10th Cir. 2015) (quoting *Dick v. Phone Directories Co.*, 397 F.3d 1256, 1268 (10th Cir. 2005) (internal quotation marks omitted)).  Although "an adverse employment action is not limited to such acts . . . we will not consider a mere inconvenience or an alteration of job responsibilities to be an adverse employment action."  *Bejar*, 601 F. App'x at 631-32 (quoting *Dick*, 397 F.3d at 1268).  ". . . [A] plaintiff must [always] show that the alleged adverse action caused more than de minimis harm to or a de minimis impact upon an employee's job opportunities or status."  *EEOC v. C.R. England, Inc.*, 644 F.3d 1028, 1040 (10th Cir. 2011).  "Acts that carry a significant risk of humiliation, damage to reputation, and a concomitant harm to future employment prospects may be considered adverse actions . . . ."  *Annett v. Univ. of Kan.*, 371 F.3d 1233, 1239 (10th Cir. 2004).

Regarding Plaintiff's assignment to teach Drama, there is no indication that Plaintiff's reassignment created more than a de minimis impact on Plaintiff's employment.  For example, in *Duvall v. Putnam City Sch. Dist., Ind. Sch. Dist. No. 1 of Okla. Cnty.*, 530 F.

---

complaints.  However, she has done little to put this evidence into a legal framework that describes the basis for her theories of discrimination and retaliation.  As noted above, while the Court must construe the filings of a pro se litigant liberally, *see Haines*, 404 U.S. at 520-21, the Court should not "construct a legal theory on [her] behalf."  *Whitney*, 113 F.3d at 1173-74.  In her Response, Plaintiff did not contest Defendant's organization of the various aspects of her claims, and the Court therefore adopts this legal framework for addressing Plaintiff's discrimination and retaliation claims.

App'x 804, 811 (10th Cir. 2013), the plaintiff was a teacher who was reassigned by the principal between school years to teach first grade instead of special education.  The Tenth Circuit agreed with the trial court that this constituted an adverse action, but only because teaching first grade was a lower-paid position.  In other words, the action was only adverse because it resulted in a monetary loss, which in this case was a five-percent decrease in the teacher's salary.

Here, Plaintiff has directed the Court's attention to no evidence creating a genuine issue of material fact that Plaintiff's reassignment to teach Drama resulted in monetary loss; that the reassignment created a significant risk of humiliation, damage to reputation, or a concomitant harm to future employment prospects; or that it entailed significantly different responsibilities, or a significant change in benefits.  Plaintiff's statement that "[a]ssigning Plaintiff to teach Drama is willfully obstructive to Plaintiff's career goals and future promotions" is conclusory, she does not recite any supporting evidence, and the Court may not infer the negative impact on her future which Plaintiff asserts.  *Response* [#82] at 17. To the extent Plaintiff was not hired for the positions of TCT Coordinator, Disciplinary Coach, or MLF, the Court notes that she has presented no argument or evidence that these events were directly or indirectly caused by her position as a Drama teacher.  Rather, this appears to be a straight-forward case of alteration of job responsibilities that has caused no more than de minimis harm to or de minimis impact on Plaintiff's job opportunities or status despite Plaintiff's belief to the contrary.  To the extent that Plaintiff simply disliked her assignment to teach Drama, this is not grounds for finding that an adverse employment action has occurred.  *See, e.g.*, *Lombardo v. Potter*, 368 F. Supp. 2d 1178, 1195 (D. Kan. 2005) ("Plaintiff's dislike for the choices defendant and its various supervisors made over

the course of his career do not amount to adverse employment actions."); *Dunlap v. Kan., Dep't of Health & Env't,* 211 F. Supp. 2d 1334, 1343 (D. Kan. 2002) ("A supervisor's decision is not adverse employment action just because the employee dislikes or disagrees with it."); *Flores v. J.C. Penney Co., Inc.*, 189 F. Supp. 2d 1241 n.5 (2002) ("An adverse employment action does not include a mere inconvenience or an alteration of job responsibilities, nor is an action adverse simply because an employee dislikes or disagrees with it." (quoting *Sanchez v. Denver Pub. Schs.*, 164 F.3d 527, 532 (10th Cir. 1998) (internal quotation marks omitted)). The Court therefore finds that Plaintiff's reassignment to teach Drama in SY 2012-13 does not constitute an adverse employment action. Accordingly, because Plaintiff has failed to establish a prima facie case of discrimination to establish summary judgment in favor of Defendant is appropriate on this claim.

### 2.  Harassment by Principal Kalbach

The Court next turns to the asserted harassment of Plaintiff by Principal Kalbach. Under Title VII an employer may not discriminate against an employee by allowing "a hostile work environment based on race or national origin discrimination." *Al-Kazaz v. Unitherm Food Sys., Inc.*, 594 F. App'x 460, 462 (10th Cir. 2014) (citing *Hernandez v. Valley View Hosp. Ass'n*, 684 F.3d 950, 957 (10th Cir. 2012)).

> To survive summary judgment on a claim alleging a racially hostile work environment, the plaintiff must show that a rational jury could find that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, and that the victim was targeted for harassment because of . . . race or national origin.

*Al-Kazaz*, 594 F. App'x at 462 (quoting *Hernandez*, 684 F.3d at 957). Thus, in short, a plaintiff alleging hostile work environment must show that the discrimination was pervasive

or severe enough to alter the terms, conditions, or privileges of employment. *Coleman v. Gen. Motors*, 599 F. App'x 341, 342 (10th Cir. 2015) (citing *Morris v. City of Colo. Springs*, 666 F.3d 654, 660 (10th Cir. 2012)).

"[W]hether a hostile environment claim is actionable depends not only on the number of incidents, but also on the severity of the incidents." *Al-Kazaz*, 594 F. App'x at 462 (quoting *Tademy v. Union Pac. Corp.*, 614 F.3d 1132, 1143 (10th Cir. 2008)). "[W]e consider the work atmosphere both objectively and subjectively, looking at all the circumstances from the perspective of a reasonable person in the plaintiff's position." *Al-Kazaz*, 594 F. App'x at 462 (quoting *Tademy*, 614 F.3d at 1144). "[T]o determine whether an environment is sufficiently hostile or abusive" to a reasonable person, we consider all circumstances, "including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Al-Kazaz*, 594 F. App'x at 462 (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998)). Offhand comments and non-serious isolated incidents are insufficient, since Title VII is not a "general civility code." *Al-Kazaz*, 594 F. App'x at 462 (quoting *Faragher*, 524 U.S. 775 at 788). Also, "mere utterance of an . . . epithet which engenders offensive feelings in a[n] employee does not sufficiently affect the conditions of employment to implicate Title VII." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (citation and internal quotation marks omitted). But "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated." *Al-Kazaz*, 594 F. App'x at 462 (quoting *Harris*, 510 U.S. at 21).

Even to the extent that Principal Kalbach's words and actions could possibly be construed as being offensive and derogatory, her conduct cannot objectively be construed as being so severe or pervasive as to create an abusive working environment.[19]  First, Plaintiff has directed the Court's attention to no evidence that Principal Kalbach made any racist comments.  *See Chavez v. New Mexico*, 397 F.3d 826, 832 (10th Cir. 2005) (noting that a violation of Title VII requires a "steady barrage of opprobrious racial comments").  Second, as Defendants note, silent treatment, disapproving or condescending looks, and other forms of passive action do not, as a matter of law, constitute materially adverse actions.  *Motion* [#79] at 20 (citing *Johnson v. Weld Cnty.*, No. 06-cv-02362-JLK, 2008 WL 4402247, at *8 (D. Colo. Sept. 24, 2008) (citing *Mackenzie v. City & Cnty. of Denver*, 414 F.3d 1266, 1279 (10th Cir. 2005); *Steele v. Kroenke Sports Enters., L .L.C.*, 264 F. App'x 735, 746 (10th Cir. 2008))); *Somoza v. Univ. of Denver*, 513 F.3d 1206, 1219 (10th Cir. 2008).  Third, the United States Supreme Court has stated that "discourtesy or rudeness should not be confused with racial harassment."  *Faragher*, 524 U.S. at 787.  Non-racial statements consisting of reprimands, belittling or demeaning tones, negative comments, and even verbal insults are not actionable under Title VII.  *Somoza*, 513 F.3d at 1219; *White v. Home Depot U.S.A., Inc.*, No. 05-cv-00683, 2006 WL 2226198, at *6 (D. Colo. Aug. 3, 2006).

In short, a mere contentious relationship between an employee and her supervisor does not rise to the level of an abusive and hostile work environment, because "federal law

---

[19]  The Court notes that the letter provided by Plaintiff and written by fellow teacher Barbara Terrell-Jackson on September 17, 2014, is not competent summary judgment evidence because it is unsworn.  *Hayes v. Mariott*, 70 F.3d 1144, 1148 (10th Cir. 1995) (stating that unsworn statements do not create sufficient grounds to oppose summary judgment).

does not guarantee a utopian workplace, or even a pleasant one. . . . [P]ersonality conflicts between employees are not the business of the federal courts." *White*, 2006 WL 2226198, at *6 (quoting *Trujillo v. Univ. of Colo. Health Science Ctr.*, 157 F.3d 1211, 1214 (10th Cir. 1998)).  Plaintiff has not directed the Court's attention to any evidence creating a genuine issue of material fact that she was subjected to an abusive and hostile work environment due to harassment by Principal Kalbach.[20]  Accordingly, summary judgment in favor of Defendant is appropriate on this claim.

### 3.    Preferential Treatment of Ms. Strong

Plaintiff asserts that Principal Kalbach gave preferential treatment to Ms. Strong, a white teacher.  Defendant argues that this aspect of Plaintiff's discrimination claim is time-barred.

"A charge [filed] under [Title VII] shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e–5(e)(1).  A claim not filed within these statutory limits is time-barred.  *Daniels v. United Parcel Serv., Inc.*, 701 F.3d 620, 628 (10th Cir. 2012) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002)); *see also Daniels*, 701 F.3d at 631 (stating that  *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618 (2007), did not overturn the general applicability of *Morgan*).  "Each discrete discriminatory act starts a new clock for filing charges alleging

---

[20] Plaintiff provides evidence that she was put on administrative leave by Principal Kalbach in early 2011 due to alleged inappropriate physical contact with a student, that Principal Kalbach required Plaintiff "to do extra hall duty during all passing periods between classes during the school year of 2012-2013," and that Principal Kalbach required Plaintiff "to do extra lunch duty to supervise the PBIS program during her 30-minute uninterrupted lunch." *Decl. of Tim Cross* [#82-1] ¶¶ 5-7; [#82-1] at 3-4.  However, little detail is provided regarding any of these alleged actions, and certainly insufficient detail is provided to demonstrate harassment by Principal Kalbach that rises to the level of a hostile work environment under the appropriate legal standard.

that act." *Daniels*, 701 F.3d at 628 (quoting *Morgan*, 536 U.S. at 113).   The limitations period begins on "the date the employee is notified of an adverse employment decision by the employer." *Daniels*, 701 F.3d at 628 (quoting *Davidson v. Am. Online, Inc.*, 337 F.3d 1179, 1187 (10th Cir. 2003)).   "An employee need not have notice of discriminatory motivation for the limitations period to begin, merely notice of the adverse decision." *Daniels*, 701 F.3d at 628 (citing *Davidson*, 337 F.3d at 1187).   "When a complaint alleges multiple discrete acts, the limitations period runs separately for each act." *Daniels*, 701 F.3d at 628 (citing *Davidson*, 337 F.3d at 1185).

Plaintiff filed her First Charge on April 26, 2013. [#79-22].  To the extent that she complains that Ms. Strong should not have been retained for SY 2011-12 without the District first posting the position and interviewing applicants, this event and Plaintiff's subsequent knowledge of it occurred more than 300 days before the filing of her First Charge, i.e., in April or May of 2011. [#79-12] ¶¶ 3, 12.  Accordingly, any Title VII claim based on this act is time-barred.

Similarly, to the extent that Plaintiff complains that Ms. Strong's contract to teach was renewed in 2012 for SY 2012-13, the renewal announcement was made to staff by late May 2012. *Decl. of Kalbach* [#79-12] ¶ 6.  Plaintiff did not file her First Charge until more than 300 days later in April 2013, *see* [#79-12], and thus any Title VII claim based on this act is also time-barred.

To the extent that Plaintiff argues that Ms. Strong should not have been retained as a 6th Grade Reading teacher in SY 2013-14, while Plaintiff was assigned to continue teaching Drama as she did in SY 2012-13, Plaintiff has failed to demonstrate that she suffered an adverse employment action as a result of these circumstances.  As noted

above in Section III.A.1., "a plaintiff must [always] show that the alleged adverse action caused more than de minimis harm to or a de minimis impact upon an employee's job opportunities or status." *C.R. England, Inc.*, 644 F.3d at 1040.   Regarding Plaintiff's retention to teach Drama for another year, there is no indication that it created more than a de minimis impact on Plaintiff's employment.   Plaintiff has directed the Court's attention to no evidence creating a genuine issue of material fact that her retention to teach Drama resulted in monetary loss, created a significant risk of humiliation, damage to reputation, or a concomitant harm to future employment prospects, entailed significantly different responsibilities, or a significant change in benefits when compared with the 6th Grade Reading teaching assignment.   As noted above in Section III.A.1., Plaintiff's conclusory statement that "[a]ssigning Plaintiff to teach Drama is willfully obstructive to Plaintiff's career goals and future promotions" is not supported by evidence in the record. *Response* [#82] at 17.

The Court's role is "not to act as a super personnel department that second guesses employers' business judgments." *Conroy v. Vilsack*, 707 F.3d 1163, 1177 (10th Cir. 2013) (citation omitted).   "Indeed, *some* subjectivity is to be expected in every hiring decision." *Id.*   "Title VII does not do away with traditional management rights.   An employer has discretion to choose among equally qualified candidates, provided that the decision is not based upon unlawful criteria." *Id.* at 1177-78 (citation omitted).   Here, in the context of yearly teaching assignments, it is similarly not the Court's role to second guess Defendant's business judgment, so long as the teaching assignments were not based on unlawful criteria.   Plaintiff directs the Court's attention to no evidence creating a genuine issue of material fact that the SY 2013-14 assignments were based on unlawful criteria.   *See*

*Daniels*, 701 F.3d at 625 (noting that to present a prima facie case of discrimination, plaintiff must prove adverse employment action occurred "under circumstances giving rise to an inference of discrimination").  Accordingly, the Court therefore finds that there is no genuine issue of material fact regarding whether Plaintiff's retention to teach Drama in SY 2013-14, while Ms. Strong was retained to teach 6th Grade Reading, constitutes unlawful discrimination.

### 4. Principal Kalbach's Involvement in Plaintiff's Hiring Interviews

Plaintiff claims that Principal Kalbach discriminated against her in connection with her application for two positions with Defendant, i.e., TCT Coordinator and Disciplinary Coach.  She asserts that Principal Kalbach's undisputed failure to provide her a letter of reference with respect to the TCT Coordinator position and a disputed negative reference with respect to the Disciplinary Coach position constitute discrimination.

A negative reference may be considered an adverse employment action because it may harm future employment prospects and carry a significant risk of humiliation or damage to one's reputation.  *Annett*, 371 F.3d at 1239.  However, Plaintiff has directed the Court's attention to no case, and the Court has found none, where failure to provide a letter of reference, whether positive or negative, has been construed as an adverse employment action.  Further, the evidence here is uncontroverted that Principal Kalbach did not provide a letter of reference because the submission deadline had passed by the time she became aware of Plaintiff's request for one.[21]  *Depo. of Kalbach* [#79-7] at 68-69; *Depo. Ex. K* [#79-

---

[21]  It is unclear precisely when this happened, but it appears to have been near the time when Plaintiff requested the letter of reference and no later than June 25, 2012.  *See Depo. of Kalbach* [#79-7] at 68-69; *June 25, 2012 E-mail from Ronda J. Schimpf to Principal Kalbach* [#82-51] at 1.

23] at 1; *Depo. of Pl.* [#79-3] at 127, 133-34.   The evidence is also uncontroverted that Principal Kalbach believed it would be a conflict of interest to provide a letter of reference for any candidate for the TCT Coordinator position once she learned that she would be serving on the interview panel.   *Depo. of Kalbach* [#79-7] at 69-71, 76-77.   In addition, Plaintiff has not directed the Court's attention to any evidence of disparate treatment, i.e., that Principal Kalbach provided letters of reference for others in connection with this position, but not Plaintiff.   Finally, there also is no causation evidence, i.e., no evidence that Plaintiff was not selected for the TCT Coordinator *because*, in whole or in part, Plaintiff did not submit a letter of reference from Principal Kalbach.

Similarly, Plaintiff fails to direct the Court's attention to evidence that Principal Kalbach gave a negative reference with respect to the Disciplinary Coach position.   In her deposition, Plaintiff stated that she "believe[d]" that Principal Kalbach gave her a negative reference but provides no support for this allegation other than that she subjectively felt that she did well in the interview and that she produced a very good writing sample for the hiring committee's review. [#79-3] at 131.[22]   Plaintiff testified that neither Dr. Swift, who was on the hiring committee, nor anyone else told her that Principal Kalbach gave her a negative reference.   *Id.* at 132-33.   In short, Plaintiff merely believes that Principal Kalbach gave a negative reference for the Disciplinary Coach position, but her unsubstantiated belief is insufficient to withstand summary judgment without providing information as to the source of Plaintiff's alleged personal knowledge supporting the assertion.   *See Bones*, 366 F.3d

---

[22]   This is like arguing that someone must have told partygoers not to eat the cookies I baked because no one ate them, even though I used all the best ingredients and thought they turned out well.

Case 1:14-cv-01520-KLM   Document 107   Filed 07/21/15   USDC Colorado   Page 25 of 32

at 875. Thus, Plaintiff has failed to provide evidence creating a genuine issue of material fact regarding an adverse employment action in connection with Principal Kalbach's references for Plaintiff.

Finally, the Court addresses Principal Kalbach's position as part of the hiring committee for the TCT Coordinator position. The parties have presented no legal support, and the Court has found none, that the mere fact that Principal Kalbach sat on the interview panel was an adverse employment action. *See Motion* [#79] at 25; *Response* [#82] at 28; *see also Decl. of Urbanski* [#79-13] ¶ 13 ("There is no policy or rule in the District prohibiting a principal from serving on an interview team for a teacher at her school. This most commonly happens for district-level or central-office positions like the TCT Coordinator position."). However, Plaintiff's argument that she was not *hired/promoted* due to the involvement of Principal Kalbach is a different matter. *See Response* [#82] at 28. Failure to hire and failure to promote are adverse employment actions. *See Barone v. United Airlines, Inc.*, 355 F. App'x 169, 172 (10th Cir. 2009). Thus, the Court finds that Plaintiff has provided sufficient evidence regarding this element of her prima facie case.

Defendant also argues that Plaintiff has failed to provide evidence that she was treated less favorably than others. *Motion* [#79] at 25; *see Argo*, 452 F.3d at 1201. The evidence is undisputed that Principal Kalbach served on interview panels involving other teachers at Sabin, including when interviewing teachers who were believed to be non-Asian/non-Chinese. *Depo. of Kalbach* [#79-7] at 76-77; *Decl. of Kalbach* [#79-12] ¶ 18. There is no evidence of any rule or policy that prohibited or discouraged Principal Kalbach from serving on such interview panels. *See Decl. of Urbanski* [#79-13] ¶ 13. Plaintiff provides no evidence that Principal Kalbach made any negative comments about Plaintiff

-25-

to the other members of the interview committee or in any way treated Plaintiff differently from other candidates.  To the contrary, Defendant directs the Court's attention to evidence that Principal Kalbach did not provide a negative reference or make negative comments about Plaintiff.  *Decl. of Kalbach* [#79-12] ¶ 19 ("During and [Plaintiff's] interview for the TCT Coordinator position, I said nothing negative about her.  I stayed silent while the other interviewers reached their consensus that she was not the best candidate and then said that I agreed."); *see also Decl. of Urbanski* [#79-13] ¶ 14 ("I served on the panel that interviewed [Plaintiff] and other candidates for the position of TCT Coordinator and ultimately selected a candidate for that position.  My opinion was that Ms. Chung did not demonstrate the knowledge, skills and abilities required for the position.  Ms. Chung was not denied that position because of anything Sherry Kalbach said or did.").  Plaintiff fails to direct the Court's attention to any evidence that she was treated less favorably than others interviewing for the position.  The Court is fully cognizant of Plaintiff's conclusory allegation that she was treated unfavorably; but "the applicable standard is one of relative—and not absolute—disfavor."  *Toure v. United Nat. Foods*, No. 12-cv-02790-RM-KLM, 2014 WL 2442962, at *9 (D. Colo. May 30, 2014) (internal quotation marks omitted).  Accordingly, absent evidence that she was treated unfavorably compared to similarly-situated employees, the Court cannot find that Plaintiff has created a genuine issue of material fact regarding whether she was treated less favorably.

Based on the foregoing, the Court finds that Plaintiff has failed to identify evidence creating a genuine issue of material fact regarding her prima facie case of Title VII discrimination.  Accordingly, judgment shall enter on this claim in favor of Defendant.

B.    **Title VII Retaliation**

Plaintiff appears to argue that Defendant retaliated against her for filing her First

Charge with the EEOC in April 2013 by (1) failing to return her to the 6th Grade Reading

assignment she last held in SY 2012-13, and (2) failing to hire her as the MLF.  The Court

addresses each in turn.

To establish a prima facie case of retaliation pursuant to Title VII, a plaintiff must

show that "(1) she engaged in protected opposition to discrimination; (2) she suffered an

adverse action that a reasonable employee would have found material; and (3) a causal

nexus exists between her opposition and the employer's adverse action."  *Durant v.*

*MillerCoors, LLC*, 415 F. App'x 927, 932 (10th Cir. 2011) (quoting *Montes v. Vail Clinic,*

*Inc.*, 497 F.3d 1160, 1176 (10th Cir. 2007)).  Defendant's argument here focuses solely on

the third element.  *Motion* [#79] at 26-28; *Reply* [#88] at 25.

Defendant disputes that Plaintiff has provided evidence of a causal connection

between her protected act and the asserted retaliatory acts.  *Id.*  The Tenth Circuit Court

of Appeals has unequivocally stated that "the standard of causation for a Title VII retaliation

claim is 'but for' causation."[23]  *Doe v. Bd. of Cnty. Comm'rs of Payne Cnty., Okla.*, __ F.

App'x __, __, No. 14-6187, 2015 WL 3500019, at *3 (10th Cir. June 4, 2015) (citing *Ward*

*v. Jewell*, 772 F.3d 1199, 1203 (10th Cir. 2014)).  Accordingly, Plaintiff must show that

there are factual disputes relating to whether, but for the filing of her First Charge, she

would have been returned to the 6th Grade Reading assignment and she would have been

---

[23]  The Tenth Circuit noted, without deciding, that the ruling of the United States Supreme
Court in *University of Texas Southwestern Medical Center v. Nassar*, 133 S.Ct. 2517 (2013),
"suggests that a mixed-motive standard does not apply to any claims other than Title VII
discrimination claims."  *Doe*, 2015 WL 3500019, at *3 & *3 n.3.

hired as the MLF.  Plaintiff is unable to meet this standard.

The circumstances addressed by the Tenth Circuit Court of Appeals in *Ward v. Jewell*, 772 F.3d at 1199, are substantially similar to the facts presented here.  The *Ward* court first addressed the contours of the "but for" causation standard.  772 F.3d at 1203.

> To establish a causal connection, Mr. Ward must present "evidence of circumstances that justify an inference of retaliatory motive.  If the protected conduct is closely followed by the adverse action, courts have often inferred a causal connection.   Because Mr. Ward's participation in the EEOC proceedings took place years earlier, Mr. Ward must use "additional evidence . . . to establish causation."  *See Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999) (stating that a three-month period between the protected conduct and the adverse action was too long for a fact-finder to infer causation).   To survive summary judgment, Mr. Ward had to present "additional evidence" tying the adverse employment actions to Mr. Ward's participation in the EEOC proceedings.   The Supreme Court has likened this burden to a showing of "but-for causation."  The evidence of but-for causation must be based on more than mere speculation, conjecture, or surmise.

*Id.* (most internal quotation marks and citations omitted).  Here, Plaintiff's First Charge was filed in April 2013. [#1] at 8.  The asserted retaliatory act of failing to return her to a 6th Grade Reading assignment occurred in April 2014, approximately twelve months after the filing of her First Charge.  *Decl. of Kalbach* [#79-12] ¶ 21.  Taking the evidence in a light most favorable to Plaintiff as the non-movant, the asserted retaliatory act of failing to hire her as the MLF occurred in August 2013, approximately four months after the filing of her First Charge.  *Depo. of Brilliant* [#79-5] at 4.  Because the Tenth Circuit has held that a three-month period between the protected conduct and the adverse action is too long for a fact-finder to infer causation, *see Anderson*, 181 F.3d at 1179, Plaintiff must present additional evidence tying the asserted adverse employment actions to the filing of her First Charge in order to survive summary judgment.  *See Ward*, 772 F.3d at 1203; *see also Meiners v. Univ. of Kan.*, 359 F.3d 1222, 1231 (10th Cir. 2004) (stating that a period of two-

to-three months between protected conduct and adverse employment action was not sufficient alone to establish causation in Title VII failure-to-hire case); *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997) (stating that a three-month period, standing alone, is insufficient to establish causation).

Regarding the school district's failure to hire her as the MLF, Plaintiff fails to direct the Court's attention to evidence in the record demonstrating that Mr. Swift, who she says made the hiring decision, or anyone who interviewed her, was aware that Plaintiff filed the First Charge. As the Tenth Circuit has stated, "[t]o establish a causal connection, [P]laintiff must show that the individual[s] who took adverse action against [her knew] of [Plaintiff's] protected activity." *Ostler v. Anderson*, 200 F. App'x 750, 752 (10th Cir. 2006). This absence of evidence is fatal to her claim.

Regarding the failure to return her to a 6th Grade Reading assignment, Plaintiff had been assigned to teach Drama for SY 2013-14, and Principal Kalbach's decision to keep her in that assignment for SY 2014-15 maintained the status quo. Ms. Strong retained her position as a 6th Grade Reading teacher both before and after the First Charge was filed. *Decl. of Kalbach* [#79-12] ¶ 13 ("I renewed Susan Strong's contract for the 2012-2013 School Year and assigned her to teach 6th Grade Reading. I did so because Susan had performed well in the 2011-2012 School Year, as reflected in her performance review."); *id.* ¶ 16 (discussing assignments in SY 2013-14); *Depo. of Pl.* [#79-4] at 181-82 (stating that Ms. Strong taught 6th Grade Reading for SY 2014-15).

First, Plaintiff directs the Court's attention to no evidence in the record that she was slated to return to the 6th Grade Reading position before she filed the First Charge and that this expectation or promise did not come to fruition after the filing of that Charge. *See*

*Morgan v. Hilti*, 108 F.3d 1319, 1324 10th Cir. 1997 (holding that there was no retaliation when the employer issued poor attendance warnings both before and after the filing of the plaintiff's charge of discrimination); *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (10th Cir. 2001) (holding that the employer's transfer of the plaintiff one month after it learned of the plaintiff's suit was insufficient evidence to demonstrate causation because the employer presented evidence that it was contemplating the plaintiff's transfer before it learned of the suit, and stating that "[e]mployers need not suspend previously planned transfers upon discovering that a Title VII suit has been filed, and their proceeding along lines previously contemplated . . . is no evidence whatever of causality").

Second, Plaintiff presents no evidence of causation—i.e., that the filing of her First Charge in April 2013 affected Principal Kalbach's decision a year later to retain Plaintiff to teach Drama in SY 2014-15.  Plaintiff had taught Drama the previous school year, and giving her the 6th Grade Reading assignment that she preferred would have displaced another teacher.  In other words, "[a] reasonable fact-finder could not infer retaliation from the decision to keep another employee in [her] job rather than replace [her] with someone" else, i.e., Plaintiff, even if the position had been previously held by Plaintiff.  *See Ward*, 772 F.3d at 1204 (holding that the plaintiff failed to demonstrate causation in a situation where he argued that his employer should have demoted or fired the other employee and should have given the plaintiff his previous supervisory responsibilities).[24]

---

[24] Plaintiff attempts to direct the Court's attention to an otherwise-unidentified exhibit titled "Similarly Situated Assignment [R]equests Chung-Strong" in support of her argument that she was better qualified than Ms. Strong for the 6th Grade Reading assignment and thus that Defendant retaliated against her by failing to displace Ms. Strong so Plaintiff could have that assignment instead. *Response* [#82] at 33.  The Court has been unable to find a document with this title among the more than 650 pages of unorganized exhibits submitted by Plaintiff in support of her Response.

In short, because Defendant Kalbach's decision to retain Plaintiff as a Drama teacher for SY 2014-15 occurred a year after Plaintiff submitted the charge, causation may not be inferred based on the timing of the decision, and Plaintiff has presented no other evidence demonstrating the requisite "but-for" causation.  *See Ward*, 772 F.3d at 1203. "The evidence of but-for causation must be based on more than mere speculation, conjecture, or surmise."  *Id.*

Thus, the Court finds that Plaintiff has failed to establish a prima facie case of retaliation based either on Defendant's failure to return her to the 6th Grade Reading assignment or on Defendant's failure to hire her as the MLF.  Accordingly, Plaintiff has failed to demonstrate that there is a genuine issue of material fact regarding the causation element of her retaliation claim.  Accordingly, judgment shall enter in favor of Defendant on this claim.

## IV.  Conclusion

For the foregoing reasons,

IT IS HEREBY **ORDERED** that the Motion [#79] is **GRANTED**.  Judgment shall enter

---

To the extent Plaintiff may be referring to the documents at Docket No. 82-33, these do not support her argument.  To the extent Plaintiff may be referring to the documents at Docket Nos. 82-61 and 82-65, these do not refer to SY 2014-15.  To the extent Plaintiff may be referring to the documents at Docket Nos. 82-59 and 82-60, these appropriately refer to SY 2014-15, but they only reference Plaintiff's self-reported qualifications and preferences, as well as those of another teacher named Laura Deck ("Deck").  Ms. Strong is not mentioned in the documents at Docket Nos. 82-59 and 82-60.  To the extent Plaintiff may be referring to some other document not herein mentioned by the Court, the Court reminds Plaintiff that it is her responsibility to direct the Court's attention to evidence in support of her case.  *See* Fed. R. Civ. P. 56(c); *Nielson*, 17 F.3d at 1277 (stating that pro se litigants must follow the same procedural rules that govern other litigants).  Finally, the Court notes that to the extent Plaintiff may be also be arguing that she should have been assigned to teach reading instead of Ms. Deck, a SY 2013-14 7th Grade Reading teacher who was assigned to teach 6th Grade Reading for SY 2014-15, Plaintiff has equally failed to present any evidence that the submission of her First Charge to the EEOC a year prior had any impact on this decision.

in favor of Defendant on all claims in this matter.

IT IS FURTHER **ORDERED** that the Final Pretrial Conference and Trial Preparation Conference set for July 23, 2015 at 9:30 a.m. are **VACATED**.

IT IS FURTHER **ORDERED** that the Jury Trial set for August 10-14, 2015 is **VACATED**.

Dated: July 21, 2015                    BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge